MARCH 12,}
   1875.    }   KNAPP *v.* THE U. S. & CANADA EXPRESS CO.

The plaintiffs gave to the agent of the defendants, an express company, a promissory note, telling him they wanted him to send it by express for collection upon the makers at H.   The agent took the note, saying he would send it.   The defendants' line did not extend to H., but their practice was to deliver packages and demands for collection going beyond the terminus of their own route to R. & Co.'s Express at L.   Between R. & Co. and the defendants there was no business connection, nor any division of profits or compensation for carriage or collections; but, with respect to demands for collection received by R. & Co. from the defendants, R. & Co. reported to the general agent of the defendants in Boston and followed his directions.   *Held*, these facts did not, as matter of law, impose any obligation upon the defendants with regard to the collection of the note after its delivery to R. & Co.; but they were evidence of a contract on the part of the defendants to do with the note according to their custom and usage with respect to business of that description, even though a part of that undertaking was to be carried out at a point beyond their line, and by agents not in their immediate employ.

Where the defendants' agents were accustomed to receive notes for collection in the circumstances above recited—*Held*, the defendants were estopped to deny that such agents were authorized to make contracts on behalf of the company to transact business of such character beyond the limits of the defendants' route.

The makers of the note had property sufficient to pay the same when the defendants received it for collection; but by reason of the defendants' negligence with regard to its collection, the note became worthless upon the failure of the makers of the note.   *Held*, the damages were the amount of the note and interest.

ASSUMPSIT, by Knapp & Putnam against The U. S. & Canada Express Co.   The plaintiffs claimed to recover damages by reason of the alleged failure of the defendants in the performance of their undertaking with respect to the collection of a note for $625 against Rowell & Batchelder, of Haverhill, Mass., dated Sept. 13, 1870, payable to the plaintiffs, or order, on demand, with interest annually.   The declaration may be referred to by either party in argument.

It appeared on the trial before LADD, J., that on October 4, 1870, Knapp, one of the plaintiffs, carried the note in question to the agent of the defendants at Warren, N. H., and told him he wanted him to send it by express for collection upon the makers, at Haverhill, Mass.   Said agent took the note, saying he would send it, and there was no further evidence as to the contract upon which the note was delivered or received.   The defendants' line did not extend to Haverhill, Mass., but their practice was to deliver packages and demands for collection, going east on the Boston & Maine Railroad, to Russell & Co.'s Express at Lawrence.   There was no business connection or arrangement between the defendants and Russell & Co. for a division of the money received for carrying parcels, and for business passing over the two lines; but it did appear that with respect to demands for collection received by Russell & Co. from the defendants, Russell & Co. reported to and communicated with the defendants' general agent in Boston, and followed his directions in relation to the same.   But in this case Russell & Co. did not communicate with the defendants' agent with respect to said demand and business until after the failure of Rowell & Batchelder, as hereafter stated.   The defendants claimed, as matter of law, that they were not liable for any default which did not happen on their own route; and when they had properly delivered the package, according to their custom and usage, to Russell & Co.'s Express at Lawrence, they had performed all the duty which by law, under the circumstances of this case, they were required to perform; but the court ruled, and charged the jury, that the evidence above reported was *prima facie* evidence of a contract on the part of the defendants to do with the note according to their custom and usage with respect to business of that description, even though a part of that undertaking was to be carried out at a point beyond their line, and by agents not in their immediate employ.   To this ruling and instruction the defendants excepted.   The usage of the defendants was in controversy, and evidence was introduced on both sides in reference to the length of time within which, according to such usage, notes payable on demand, taken by the defendants for collection against persons reputed to be responsible, and being apparently responsible, were to be returned if not paid.   The defendants introduced evidence tending to show that the limit was thirty days; and the plaintiffs, on the other hand, introduced an envelope prepared by the defendants, with instructions printed thereon, containing the following clauses:   "If simply a bill to be collected, the agent will present the same promptly; if not paid, report the fact, with reasons, to the office from which it was received; if not paid on second

presentation, return it with reasons." The defendants thereupon offered the testimony of a witness that the defendants' agents were not authorized to make contracts, on behalf of the company, to carry articles or transact business beyond the defendants' route. The court excluded the evidence, and the defendants excepted.

The note was carried to Haverhill, Mass., Oct. 5, and presented to Rowell & Batchelder, and payment demanded by Russell & Co., Oct. 6. Rowell & Batchelder said they would pay it Oct. 20, and the note remained in the hands of Russell and Co., at Haverhill, until Oct. 20. Oct. 21 it was again presented, and payment refused on the ground that the makers were unable to pay; and it turned out that Rowell & Batchelder failed about Oct. 20 or 21. Rowell & Batchelder had property out of which payment of the note might have been secured at the time it was first presented to them for payment, and continued in that situation up to the time of their failure; but upon their failure the note became worthless.

No exceptions were taken to the charge of the court respecting the measure of damages; but after a verdict for the plaintiffs for the amount of the note and interest, the defendants moved to set the same aside on the ground of excessive damages, and also as being against evidence as respects the amount. This motion was overruled, and the defendants excepted.

The case was reserved.

*Putnam* and *H.* and *G. A. Bingham* and *Carpenter*, for the plaintiffs, cited and commented in argument upon *Muschamp* v. *Lawrence, &c., Junc. Railway*, 8 M. & W. 421; *Gray* v. *Jackson*, 51 N. H. 12; *State* v. *Hodge*, 50 N. H. 519; Story on Bailments, sec. 538; *Lock* v. *Railroad*, 48 N. H. 342; *Walter* v. *Abergate, &c., Railway Co.*, 3 Eng. L. & E. 49; *Weed* v. *Saratoga & Schenectady R. R.*, 19 Wend. 534; *Bennett* v. *Filgard*, 1 Fla. 403; *Whitesides* v. *Russell*, 8 W. & S. 44; *McGregor* v. *Kilgore*, 6 Ohio 143; *Fay* v. *Troy & Boston R. R.*, 24 Barb. 382; *Russell* v. *Livingston*, 24 N. Y. 259; *Van Winkle* v. *Adams Express Co.*, 3 Rob. 59; *Noyes* v. *Rutland & Burlington R. R.*, 27 Vt. 110; Angell on Carriers, secs. 95–98; *Mayall* v. *B. & M. R. R.*, 19 N. H. 122; *Hatch* v. *Taylor*, 10 N. H. 538; *Towle* v. *Leavitt*, 23 N. H. 360; *Hall* v. *Cheney*, 36 N. H. 26; *Moses* v. *Norris*, 4 N. H. 304; *Hackett* v. *B. C. & M. R. R.* 35 N. H. 399; *Miller* v. *Steam Nav. Co.*, 13 Barb. 361; *Gould* v. *Chapin*, 10 Barb. 612; 2 Pars. on Cont. 197.

*Barnard* and *Felton*, for the defendants, cited and commented in argument upon *Gray* v. *Jackson*, 51 N. H. 9; *Nutting* v. *Conn. Riv. R. R.*, 1 Gray 502; *Thomas* v. *B. & P. R. R.*, 10 Met. 472; *Norway Plains Co.* v. *B. & M. R. R.*, 1 Gray 272; *St. John* v. *Van Santvoord*, 6 Hill (N. Y.) 157; *Farmers and Mech. Bank* v. *Champlain Trans. Co.*, 18 Vt. 131, 140; S. C., 23 Vt. 186, 210; *Hood* v. *N. Y. & N. H. R. R. Co.*, 22 Conn. 1, 502; *Jennison* v. *Camden & Amboy Railway* (4 Am. Law Reg. 234), Redf. Railways 282.

*FOSTER, C. J., C. C.   1.  The legal principles applicable to the duties of common carriers, to a destination beyond the limits of their own route, are so well settled, at home and abroad, that any special declaration or exposition of them, in this connection, would seem to be superfluous.

They are expressed in few and plain terms by Judge REDFIELD thus : " It seems to be a well recognized rule in the American courts, applicable to express carriers as well as other common carriers, that the receipt of a parcel of any kind destined to a remote point, and which, in the ordinary course of the transaction of the business, the first carrier will have to intrust to others with whom he holds no special business relations, unless the first carrier makes some special and express undertaking, will only render him responsible as a common carrier to the termination of his own route, in the direction of the transportation ; and this rule will exonerate a carrier who gives his receipt for a bill of goods, for collection, from a person beyond his route, in the absence of any special contract for the faithfulness of other carriers to whom in the ordinary course of the business the bill was intrusted, and who failed to pay over the amount collected," or (to apply the terms of the proposition directly to the present case) who failed to collect the bill or note.  Redf. Car., sec. 67.

If the present case falls within the scope of this statement of a general principle, it presents no legal difficulty ; if it does not, it is but the case of the application of evidence, under settled rules of law, to the special contract exhibited.

And whether the defendants are in the position of liability imposed by stringent rules upon those who assume the obligations of common carriers is perhaps immaterial, because, if charged at all, it must be by force of a contract—one which they might make as well if they were not common carriers as if they were dealing with the plaintiffs in that capacity.

The question is, What was, in fact, their undertaking ? what did they agree to do ?

Upon the evidence—the legal admissibility of which is disputed—they agreed to take the note in question, and " send it by express for collection upon the makers at Haverhill, Mass.,"—a place beyond and disconnected from the direct line of their established route.

Now, what was comprehended within the fair meaning of their agreement to take the note and send it for collection ?   Was it to give the note to another company or person for collection, and thereby wash their own hands of it ?  or was it to employ, as their own agent, another company or person, who should endeavor to collect the note of the makers at Haverhill, in pursuance of the defendants' contract with the plaintiff to send it by express for collection ?

The court cannot say what this contract was, because it rested in no written stipulations, but wholly in verbal agreement, modified, explained, and controlled by circumstances involving both parties to the undertaking.

*LADD, J., having tried this case, did not sit.

The question, What was the contract? was purely a question of fact. *Gray* v. *Jackson*, 51 N. H. 9, and cases there cited.

Now, as bearing upon the question, What was the contract? the circumstances are important, as tending to show how the parties mutually understood and regarded the transaction.

If the plaintiffs and the defendants understood that the latter undertook to take steps for the collection of the note at Haverhill, that mutual understanding is the contract. The usage with regard to such collections is evidence tending to show the fact of an understanding that the defendants were to deal with this note according to the usage. If the plaintiffs had and the defendants had not such an understanding, the usage of the latter may be evidence that they held themselves out and practically represented themselves as undertaking to do what they usually did ; and if the plaintiffs acted on the faith of such holding out and practical representation, the doctrine of estoppel may be applied. The defendants may be estopped to deny that they understood the contract to be what their conduct induced the plaintiffs to understand it to be. *Gray* v. *Jackson*, before cited ; *Farmers and Mech. Bank* v. *Champlain Trans. Co.*, 23 Vt. 186 ; *Perkins* v. *P. S. & P. R. Co.*, 47 Me. 573.

" In this view," said DOE, J., in *Gray* v. *Jackson*, " there is no law peculiar to this branch of the contract of a common carrier. There is no law in it, except the elementary and general principles applicable to all contracts, that a contract is a mutual understanding, and that a party may be estopped to deny that his understanding was such as he induced the other party to believe it to be."

In this case, the only evidence of an expression of the contract, by words, is the direction by the plaintiffs to the defendants to send the note " by express, for collection upon the makers, at Haverhill, Mass," and the agent of the defendants took the note, saying " he would send it." How?—to Russell & Co., as the plaintiffs' agents? But the plaintiffs gave no such direction, and sent no message to Russell & Co. concerning the method to be taken by them for the collection of the note. Why did they not give such direction and instructions? It may be because they understood that the defendants would attend to that needful matter. If the fact were, as the evidence disclosed, that the practice of the defendants was " to deliver packages and demands for collection, going east on the Boston & Maine Railroad, to Russell & Co.'s Express at Lawrence ;" and if, " with respect to demands for collection received by Russell & Co. from the defendants, Russell & Co. reported to and communicated with the defendants' general agent in Boston, and followed his directions in relation to the same ;"—if all this were a " practice," quite likely the knowledge and understanding of it entered into and became a part of the contract between these parties, and it was very clearly competent (upon a vast majority of the authorities, most of which are collected in *Gray* v. *Jackson*, and in *Barter* v. *Wheeler*, 49 N. H. 9) for the court to submit the evidence of such a practice and usage to the jury, as tending to show that the

parties contracted with reference to such practice and usage. If the evidence were not sufficient, as directly proving an express contract in which this element of known usage was a tacit ingredient, the same evidence was competent as tending indirectly to the same result by operation of estoppel.

At all events it was competent, whatever its weight might be; and I do not understand (neither do I understand the defendants' counsel to understand or to contend) that the manner of submitting the evidence to the jury by the judge at *nisi prius* is worthy of exception.

The error, as they call it, consists in the admission of the testimony, and not to the charge of the judge: that being admitted, it was "*prima facie* evidence of a contract on the part of the defendants to do with the note according to their custom and usage."

The exception, as I understand it, is, that as matter of law such evidence could not sustain such a contract; and not that if as matter of law it might sustain such a contract, then as matter of fact it was not *prima facie* evidence of the contract.

To tell the jury (which is all the judge did in this instance) that the language and action of the parties, and the circumstances of the usage with regard to demands entrusted to the defendants for collection, was evidence in support of the special contract alleged by the plaintiffs, was a very different thing from telling the jury (as the court never did, nor could) that the reception by the defendants of the note, upon the evidence and in the circumstances, created, as matter of *law*, an obligation on the part of the defendants to collect the note, or to do anything whatever with it except to deliver it to Russell & Co.

I am unable to entertain any doubt that the ruling and instructions of the court with regard to this evidence are not exceptionable.

2. No principle is better settled, at least in this state, than that where a corporation or a company " have a general agent who is employed by them for the express purpose of receiving and transporting merchandise for hire, and is held out to the world as invested with authority for this purpose, if goods are delivered to him to be transported in the way of his duty, the corporation or company will be liable for the manner in which that duty is performed, and the contract of bailment may be regarded as made with them." GILCHRIST, C. J., in *Mayall* v. *B. & M. Railroad,* 19 N. H. 127 ; *Hatch* v. *Taylor*, 10 N. H. 538 ; *Bean* v. *Sturtevant*, 8 N. H. 146. The law seems to go even to this extent,—that common carriers who allow their servants,—as, for example, the drivers of stage-coaches and the captains of steamboats, or the conductors of railway trains,—to carry parcels, are liable for their safe delivery, whether they themselves derive any advantage from the transactions or not. Redf. Car., secs. 41–44; *New Jersey Steam Nav. Co.* v. *The Merchants Bank*, 6 How. 334.

The same rule obviously applies to common carriers, or other companies, whose business is to make collections after the notoriously recognized practice and manner of express companies.

*Prima facie*, the owners are liable for all contracts made by their

general agents for that purpose, within the powers of the owners themselves; and the burden rests upon them to show that the owner had made a private contract with the agent, or given credit exclusively to him.    Redf. Car., sec. 42 ; 2 Redf. Railways, sec. 182.

These broad general principles clearly include and control the case at bar.    Like all other corporations of similar character, the defendants do all their business by general agents representing to the world the company itself.    This company was accustomed, through its general agents, to carry parcels and to make collections outside the termini of its own route.    It was accustomed to do this in the manner disclosed by the case ; that is, " their practice was to deliver packages and demands for collection, going east on the Boston & Maine Railroad, to Russell & Co.'s Express at Lawrence ; " and although, in fact, " there was no business connection or arrangement between the defendants and Russell & Co. for a division of the money received for carrying parcels and for business passing over the two lines " (a fact which the plaintiffs could not be supposed to know, nor to infer, from the method of procedure adopted by this company), still " it did appear that, with respect to demands for collection received by Russell & Co. from the defendants, Russell & Co. reported to and communicated with the defendants' general agent in Boston, and followed his directions in relation to the same."

Not only were the defendants accustomed in this manner to make collections beyond the termini of their own route, but it does not appear, and is not to be presumed, that any restrictions upon their power legally to do so were imposed by charter, or by any rules, regulations, or votes of the company,—unlike, in this respect, the N. Y. & N. H. R. R. Co., who had no power under their charter to make a contract for the carriage of passengers beyond the limits of their own line.    See *Hood* v. *The N. Y. & N. H. R. R. Co.*, 22 Conn. 502.

The defendants undertook to show, in the face of the established and notorious usage of the company to do business in this way, that their agents were not authorized to make contracts on behalf of the company to transact business beyond the defendants' route.    The court properly excluded the evidence.    It was inadmissible upon the general principles just stated, and also came within the effect of the doctrine of estoppel.

In support of their exception, the defendants rely mainly upon *Hood* v. *The N. Y. & N. H. R. R. Co.*, before referred to ; but the " peculiar views " prevailing in Connecticut, concerning the power of a corporation to contract for the carriage of goods or the transaction of business beyond its own line, have not (happily for the interests of commerce) been widely disseminated.    To recognise the case and its doctrines as authority " would certainly be," in the language of Judge REDFIELD, " throwing serious hindrances in the way of business, without any adequate advantage."    And see,—as denying the authority of *Hood* v. *The N. Y. & N. H. R. R. Co.*,—*Bissell* v. *So. Mich. & No. Ind. R. R.*, 22 N. Y. 278 ; *Wheeler* v. *San Francisco & Alameda Railway Co.*, 31 Cal.

46 ; and *Nashua Lock Co.* v. *Worcester & Nashua Railroad Co.*, 48 N. H. 345.

3. I am unable to conceive of any argument that could be raised in support of the defendants' exception concerning the amount of damages found by the jury. This amount was the aggregate of the note and interest. Indeed, no argument is suggested except such as might be predicated upon a state of facts not here presented, and which the defendants have been unable to present by an amendment of the case. There must be

*Judgment upon the verdict.*

SMITH, J., concurred.

CUSHING, C. J., concurred.