## HOOD *vs.* THE NEW YORK AND NEW HAVEN RAILROAD COMPANY.

The agent of the defendants, who were a railroad corporation, running their cars from N H to P, sold the plaintiff a ticket for the fare from N H to C, which was five miles beyond P. The plaintiff, for injuries which he received, in a stage running between P and C, brought his action, upon a special contract, to carry him safely by railroad and stage, from N H to C. For more than six months before, and at the time of such sale, the defendants, through their agents, had been and were in the daily usage of entering into and fulfilling contracts identically like that alleged in the declaration, and, during said entire period, had permitted their agents publicly to represent them as vested with the powers requisite for such purpose. The plaintiff, knowing such representations, and believing them to be true, was thereby induced to enter into and pay the consideration of said contract, which otherwise he would not have done. But the defendants had not the power, under their charter, to enter into the alleged contract and had never, by any corporate vote, expressly authorized or sanctioned the same, nor had their directors, by any vote, directed any such contract to be made.

Held, that the defendants were not estopped to claim, that, under their charter, they had no power to enter into the alleged contract, and that it was not obligatory upon them.

A NEW trial having been granted by this court, in the case of *Hood* v. *The New York and New Haven Railroad Company, ante* p. 1, the cause came on again for trial before the jury, at the term of the superior court for New Haven county, holden in January, 1853.

Upon the trial to the jury, the plaintiff introduced in evidence the charter of the defendants, and the charter of the New Haven and Northampton Company, a railroad corporation, incorporated by the legislature of this state, for the purpose of constructing a railroad from the city of New Haven to the village of Plainville, in the town of Farmington, and of extending the same thence northerly to the north line of the state; also a lease from the latter company, of their entire road, to the defendants.

The plaintiff offered evidence to prove, and claimed that he had proved, the contract, as set forth in his declaration.

The defendants denied ever having made any such contract, and further claimed, that, if such contract were proved ,it was not obligatory upon them, for the reason that, under their charter, they had no power to enter into any such contract, and prayed the court so to instruct the jury. " The court, upon this subject, did inform the jury, that the defendants had not, under their charter, the power to enter into any such contract, and that the same, if proved, would not be obligatory upon them, unless they were estopped from denying their power, as claimed by the plaintiff."

The plaintiff also offered evidence to prove, and claimed that he had proved, that the defendants, from the time of taking possession of the canal road, under the aforesaid lease, and for a period of more than six months anterior to the making of the alleged contract with him, had been and were, in the daily usage of entering into, and fulfilling contracts identically like that alleged in the declaration; that, during that entire period, they had publicly represented and held themselves out to the community, through their duly authorized agents, as vested with powers requisite to enter into and fulfill such contracts, and during that entire period, had knowingly permitted their agents to represent the said company, as vested with the aforesaid powers; that the plaintiff, knowing of such representations, and believing them to be true, and being ignorant of the corporate powers of the defendants, was thereby induced to enter into said contract, and pay the defendants, therefor, the consideration demanded by them, which he should not have done, had he not known of such representations, and believed them to be true. The plaintiff thereupon claimed, that if the jury should find the facts to be, as claimed by him, the defendants were estopped from denying the obligation of said contract, and requested the court so to instruct the jury.

The defendants denied that the facts were as claimed by the plaintiff, and introduced evidence to disprove the same.

The evidence in support of the plaintiff's claim, consisted

of certain acts and declarations of the agents of the defendants, in issuing and selling tickets, and making contracts for the transportation of passengers, similar to the one claimed to have been made with the plaintiff, and in receiving and paying over to the proper officers of said company, the moneys received from the sale of such tickets, and the transportation of such passengers, and the continuance of such acts, for so long a time, and in a manner so public and notorious, that, as the plaintiff claimed, they must have been known to the directors and stockholders of said company ; and that, after such acts had become so known, the said agents were suffered to continue them, without objection from any one.

But there was no evidence that the defendants, by any corporate vote, had ever expressly authorized or sanctioned the making of any such contract, as the plaintiff claimed had been made with him. Nor was there any evidence, that the directors of said company had, by any express vote or order, directed any such contract to be made. But it was proved, and not denied, that they had appointed the proper officers and agents of said company, and without giving them any particular instructions upon the subject, had permitted them, without objection on their part, to make the declarations and perform the acts aforesaid.

The defendants thereupon claimed, that, even if the jury should find the facts to be as claimed by the plaintiff, they were not estopped from denying the obligation of said contract, because they could not, in any manner, be estopped from denying the validity of a contract, which, by the terms of their charter, they had no power to make. And they further claimed, that they could not be estopped, by any acts, declarations or contracts, made by any of their officers or agents, which they did not expressly authorize to be made, and which, by their charter, neither the company nor their officers or agents were authorized to make, and prayed the court so to instruct the jury. The court did not instruc

the jury in the manner claimed by the defendants, but charged them in conformity with the claim of the plaintiff.

The jury having returned their verdict in favor of the plaintiff, the defendants moved for a new trial, claiming that the court erred, in omitting to charge the jury, as requested by them; and the questions thereon arising were reserved for the consideration and advice of this court.

*Dutton* and *C. A. Ingersoll*, in support of the motion, contended, 1. That the action of *assumpsit* will not lie, except on a contract, under which, a promise must be proved. 1 C₁ Pl.. 88, 99.

2. That the defendants were incapable of making the contract in question; they had no powers which were not granted by their charter, and this was not. This court has held, that the defendants could not make the contract. Angell & Ames, sect. 256. *N. Y. F. I. Co.* v. *Ely*, 5 Conn. R., 558. *The People* v. *U. F. I. Co.*, 15 Johns., 383. *Hood* v. *N. Y. & N. H. R. R. Co.*, ante, p. 1.

3. That it is absurd to say, that a person is holden, on a contract which he has no power to make, in consequence of his professions to have power to make it. If this were to be allowed, the extent of a person's ability would depend entirely upon himself. 8 Gill & J., 248, 349.

4. That the court below held, that the defendants might be estopped, by their own acts, or those of their agents. But an estoppel necessarily presupposes an ability to do the act in question. The court regards the person as having done what he professes to have done, but the law never supposes a person to have done what he could not have done. *Hodges* v. *Buffalo*, 2 Den., 110, 112. *McCullough* v. *Moss*, 5 Den., 567. 8 Gill & J., 248. 7 Eng. L. & E. R., 505.

5. That no instance can be found where a person has been held by an estoppel, when he could not have been held by contract. A married woman can not be held on contract, by an estoppel; nor an infant as surety, nor an idiot.

6. That, if the agents of a corporation, either willfully or negligently, make a false representation, they are personally liable, but the corporation is not bound. Angell & Ames, sec. 309–232.

7. That the stockholders could not confer any power on the corporation, even by a unanimous assent. The power of the corporation is limited by its charter, and can not be extended by the stockholders. *N. Y. F. I. Co.* v. *Ely*, 5 Conn. R., 560. *The Phœnix Bank* v. *Curtiss*, 14 Conn. R., 443. *Welland Canal Co.* v. *Hathaway*, 8 Wend., 484. *Hayden* v. *Mid. T. Co.*, 10 Mass., 403. *Soc. of Pr. Kn.* v. *Abbott*, 2 Beavan, 559. *Ruby* v. *Ab. Soc.*, 15 Maine, 306. *Wheelock* v. *Moulton*, 15 Verm., 519. *Isham* v. *Benn. Iron Co.*, 19 Verm., 249, 250.

8. That, if such a power could be conferred, it must be by the unanimous consent of the stockholders. The court know, officially, enough of a railroad corporation, to know, that all the stockholders did not know and could not have known, of the existence of the act offered in evidence. It was, therefore, improper to leave to the jury to find a fact, which no juror could, with truth, say he believed to have existed. *Albany* v. *Cunliff*, 2 Comstock R., 165, 177.

*Baldwin, Beach,* and *R. I. & C. R. Ingersoll,* contra, 1. The first question presented by the motion, is, whether the defendants were estopped to deny their power, to enter into the contract of conveyance, with the plaintiff. The general doctrine, as to estoppels *in pais*, has been too frequently and recently recognized by this court, to be controverted. But the claim of the defendants, is, that it does not apply to corporations. This, however, is directly in the face of a long established principle in this state, fully recognized in the early case of *Buckley* v. *The Derby Fishing Company*, 2 Conn. R., 252 ; and re-affirmed in the recent case of *Fuller and wife* v. *The Naugatuck Railroad Company*, 21 Conn. R., 557. See also *Weed* v. *Saratoga Railroad Company*, 19

Wend., 534. *Muschamp* v. *Lancaster Railroad Co.* 8 Mee. & Wels., 421. *Watson* v. *Ambergate Railroad Company*, 3 E. L. & E., 497.

2. It is further claimed, by the defendants, that they could not be estopped, by any acts, declarations, or contracts, made by any of their officers or agents, which they did not expressly authorize to be made, and which, by their charter, neither the company, nor their officers or agents, were authorized to make. The doctrine here contended for, by the defendants, is, that there must have been some express authority,—a vote, or some other such corporate act, of the stockholders. But this again is directly in face of our own decisions. *Buckley* v. *The Derby Fishing Company*, 2 Conn. R. 252. *New Hope Delaware Bridge Co.* v. *Phœnix Bank*, 3 Comstock, 156: *Alleghany City* v. *McClarkin*, 14 Penn. St. R., 8. *Smith* v. *Hull Glass Co.*, 9 Eng. L. & E., 442.

3. That the strictness of the old rules, as to implied obligations of corporations, has been very much relaxed, by the late decisions.

"That corporations can now be bound by contracts, made by their agents, though not under seal, and also on an implied contract, to be deduced by inference from corporate acts, *without either vote, or deed, or writing*, is a doctrine generally established in the courts of the several states, with great clearness and solidity of argument; and the technical rule of the common law may now be considered as being, in a very great degree, done away, in the jurisprudence of the United States." 2 Kent Com., 291. Angell & Ames, on Corporations, sec. 248, 257, 284.

ELLSWORTH, J. This case was before the court at its last session, when we granted a new trial, for a verdict against evidence. The question now presented, was not then adjudicated, though it was alluded to, in the arguments of counsel, and in the opinion of the court, as one of great

importance. There was another ground for granting the new trial, entirely satisfactory to the majority of the judges, and this was passed by. It is now distinctly presented for our judgment, and is the only question on the record.

After the fullest consideration, with the aid derived from the learned and able arguments at the bar, a majority of the court do not hesitate to hold, there must be a new trial.

It will be noticed, that the suit is upon a *special promise* of the defendants to carry the plaintiff from New Haven to Collinsville; not an action against common carriers, for an injury suffered, while passing over their road, nor as founded upon a responsibility growing out of such relations. This would not answer—for the defendants could not be common carriers, except on their own road; so, the pleader declares upon a special undertaking of the defendants, aside from their appropriate line of duty, and the attempt is, to subject them on that undertaking, and on *nothing else*.

It is found, that the defendants had no power to enter into the undertaking in question, and therefore, as a ground of claim, it must be agreed, the undertaking merely is of no avail, for the reason, that the directors, having no authority, did not, in legal estimation, make the contract for the company. The question is, are the defendants estopped setting up this in their defence ? The statement of the case carries on its very face, conviction to the mind, that it can not be so. The defendants estopped from denying that they have done, what they never could have done ! It is a question of power, under the charter; and however individuals may be liable and estopped, who untruly hold themselves out as clothed with power, the defendants can not be estopped, on any such principle of law known to the court. The notion of an estoppel *in pais*, to which class, if any, this estoppel belongs, proceeds on the idea of acquiescence or consent; a consent expressly or impliedly given by the party claimed to be estopped. Of course, there must be a legal possibility, or there can be no real or supposed acqui-

escence and consent, and where consent may be given, silence may be sufficient proof, that it is given; and so, a course of known action may be sufficient proof; for the law requires no exact form. But as we say, it does require a legal possibility, and where there is none, courts can not consistently hold, there is an estoppel. The case of *Buckley* against *The Derby Fishing Company*, 2 Conn. R.,252, and that class of cases, which abound in the books, is a good illustration of the distinction above alluded to. If a corporation has the power to do a thing, and is in the habit of doing it, in a particular way, it may bind itself to third persons, though it do not pursue the exact mode prescribed in the charter; for the mode is not exclusive, but concurrent. So, too, where a provision in the charter is designed to protect the corporation, the corporation may waive this provision, and this may be proved to be done, by a repetition of acts of a like or similar character. But the question here, is, as we have said, one of power, not of form.

The plaintiff introduced circumstantial evidence on the trial, to prove, that the directors of the company made the contract, and particularly, that their subordinate agents had, for some six months previously, been in the practice of contracting with other persons, as they did with the plaintiff. Suppose this is true, and that the knowledge and consent of the directors may be properly inferred, from this continued practice of the directors; this will not place the plaintiff's case, in our judgment, on any higher ground, than if the directors had, by a formal vote, contracted with the plaintiff, to carry him to Collinsville. It being a question of power, silent acquiescence in the acts of subordinate agents does not make a stronger case; for, if a formal contract is not obligatory on the company, one proved by inferior or circumstantial evidence certainly is not. The kind of evidence is quite immaterial. Should the directors of a savings bank, or of any bank, contract with a ship-builder, for a steamship, to navigate the ocean, would this contract bind

the company? Certainly not; because the directors have no power to make it; nor would they have more, were they to make such contracts, from day to day. The legislature has absolutely marked the limit of their power, and they can not exceed it, under the charter; and if the directors, even with all the stockholders at their side, transcend the limits of the charter, and make contracts foreign to their business, they only act for themselves. The reason is, there can be no consent of the corporation. The consent of individual stockholders, however repeated, is not their consent, nor is it admissible proof, to establish consent; so that, if it were true, every stockholder had expressed his consent, it would make no difference in the case. If this is not so, there are no restrictions or limitations on chartered companies, and they may do anything and everything the directors please, which is not absolutely unlawful. The exercise of power is held to prove itself; which is absurd.

No one will say, that the first contract made by the directors, to carry to Collinsville, or Litchfield, or New Hartford, or Northampton, would be obligatory on the company; yet it must be so, if stockholders are, of course, bound by every contract of their directors. Were the charter a public one, it is agreed, the company would not be bound by such acts, however repeated; but in truth, a private charter is not essentially different from a public one, in this respect; for, the plaintiff must have known, that the defendants were incorporated by the legislature, for the purpose of making or using only a railroad. Their very name, as well as the location and business of their road, is sufficient notice, that they are not incorporated for running stages throughout the state; and no person can assume or suppose, the defendants are to go beyond the appropriate business of a railroad. The idea of an imposition on the public, as to these stages running off from the road, to and from Litchfield and other places, as the defendants' stages,

is incredible and preposterous. The public know where the charter may be seen, and what it contains.

Many cases were read, on the argument, to prove that a corporation is considered for civil purposes, as a person, and subject to the same rules of law. We do not question this, but we do not see how it helps the plaintiff's case. They hold, that a principal that *can* give authority, whether a corporation or person, may, when one assumes to act for him, and he does not object to it, be estopped denying his agency; but an infant is never estopped, nor a married woman, nor ought a body of stockholders to be, united as they are, under a specific charter; especially when the directors have disregarded it, and assumed to act according to their own pleasure. Could the, company by legal possibility, do the act, it would be otherwise.

But, it is said, the jury have found, that the stockholders, in fact, gave their consent, and it may not now be denied. We have already shown, this can make no difference; but we say further, that this notion of their consent is altogether untenable and unjust. We know, certainly, the stockholders did not, all of them, give their consent. Some were minors, married women, executors and administrators, trustees, officers of the law in possession, and some were, at the time, out of the country. So the body of stockholders was changing from day to day. Now, to hold that the entire body of stockholders gave their consent to the contract in question, and that therefore it is good, is absurd and puerile. But, suppose they did; this was not a corporate act, and has, therefore, no corporate character. We repeat, that the directors and stockholders have no corporate powers or relations, and can give no corporate consent, but what is within the appropriate business of the charter.

Again, it is said, the defendants ought not to be permitted to call in question the acts of their agents. Why not, as much as other principals, whose agents transcend their authority, and abuse their trust? If it is replied, the directors

have suffered this course of things, for months, when they could have arrested it, at once, we ask, whose agents they were? Certainly not of the innocent stockholders. The directors represent them only, while they act within the scope of the charter; the charter is the measure of their power; and sad would it be, if directors could trample upon this, and yet bind the stockholders as firmly, as if they were acting within it. If the directors have done wrong, let them suffer the consequences.

We have not thought it necessary to comment particularly on the numerous authorities, cited at the bar, on the several points made, for we find nothing in any of them, inconsistent with the views expressed.

Gill & Johnson is in direct accordance with what we have said. We place our judgment upon a plain principle of equity and law, *viz.*, that these defendants are not bound, by a contract they had no power to make, and are not estopped setting up this matter in defence.

We advise a new trial.

In this opinion, CHURCH, C. J., and STORRS, J. concurred. WAITE, J., having tried the cause in the court below, was disqualified, and HINMAN, J., dissented.

New trial to be granted.