## THOMAS HOWE vs. BOSTON CARPET COMPANY.

One manufacturing corporation may take shares of another in payment of a debt; and neither the first corporation, nor any person taking from it, with knowledge of all the facts, a negotiable promissory note of the second corporation, can, in an action thereon against the latter, summon in other stockholders and have execution against them, under *St.* 1851, c. 315.

Under the Rev. Sts. c. 38, §§ 17, 22, the notice required to be published annually by the directors of a manufacturing corporation, in order to exempt the stockholders from liability for its debts, may be published at any time within a year from the filing of the certificate of capital stock.

ACTION OF CONTRACT against a manufacturing corporation, in which several persons were summoned in as stockholders under *St.* 1851, c. 315. The case was submitted to the decision of the court upon agreed facts, which are stated in the opinion.

*F. A. Brooks,* for the plaintiff, cited *Hood* v. *New York & New Haven Railroad,* 22 Conn. 502; *Mutual Savings Bank & Building Association* v. *Meriden Agency Co.* 24 Conn. 163; *Straus* v. *Eagle Ins. Co.* 5 Ohio State R. 59; *Colman* v. *Eastern Counties Railway,* 10 Beav. 1; *Whittenton Mills* v. *Upton,* 10 Gray, 582; *Bangs* v. *Lincoln,* 10 Gray, 600; *Thayer* v. *Union Tool Co.* 4 Gray, 75; *Gray* v. *Coffin,* 9 Cush. 206; *Holyoke Bank* v. *Goodman Paper Manuf. Co.* 9 Cush. 582; *Pitcher* v. *Barrows,* 17 Pick. 363; *Thayer* v. *Buffum,* 11 Met. 398; Rev. Sts. c. 38, §§ 17, 22.

*J. G. Abbott & B. F. Brooks,* for the stockholders.

CHAPMAN, J. The right of the plaintiff to recover against the corporation ·is not contested; but the several stockholders who are summoned in deny their liability. The notes on which the action is brought (being eight in number) were all, except one, purchased by the plaintiff of the Baldwin Company, a manufacturing corporation. The plaintiff was the president and one of the directors of the Baldwin Company, and purchased the notes at a discount of fifty per cent., after all but one of them were overdue, and after he had been informed that the makers had failed, and only a few days before they took the benefit of the insolvent laws.

The Baldwin Company held twenty seven shares of stock in the Boston Carpet Company while they were holders of these notes, and until a short time before this sale of their notes to the plaintiff, namely, from June 1st 1853 to July 28th 1854; having received the shares in payment of a debt due to them from the Boston Carpet Company.

It has been decided that an individual stockholder, though he may maintain an action against the corporation, cannot summon in his co-stockholders under *St.* 1851, *c.* 315, and have execution against them for his debt. *Thayer* v. *Union Tool Co.* 4 Gray, 75. It was further decided, in the same case, that he can gain no advantage in this respect by transferring his note to a third person, and bringing a suit for his own benefit in the name of such person. The law looks through the forms of the transaction to its substantial equity. The same doctrine should be applied to a corporation which is the creditor of another corporation, and is at the same time one of its stockholders.

It is contended that this cannot be so in the present case, because it is said the Baldwin Company, being a mere manufacturing corporation, had no legal right or power to hold stock in the other corporation, and therefore it cannot be truly alleged that it was a stockholder.

That there is some limitation upon the power of corporations to invest their funds in the stock of other corporations cannot be doubted. In *Hood* v. *New York & New Haven Railroad*, 22 Conn. 502, it was held that a railroad corporation could not engage in the business of running stage coaches, and that a passenger who was injured in a stage coach owned and run by the corporation could not recover of them for an injury happening through the negligence of the driver. So in *Mutual Savings Bank & Building Association* v. *Meriden Agency Co.* 24 Conn. 159, it was held that a corporation established for a general insurance agency, commission and brokerage business, could not legally subscribe for stock in a building association and savings bank, and that an action would not lie on such subscription to collect assessments. Yet these decisions rest partly upon special statute restraints, and on that account do not aid us much in determining the present case.

In *Hodges* v. *New England Screw Co.* 1 R. I. 312, and 3 R. I. 9, the subject is well discussed, and it is held that one corporation may take stock in another for payment of a debt; while a doubt is expressed whether it may take such stock for permanent investment. The question has been discussed in several other cases out of this commonwealth, which we need not cite, because it was not presented in such an aspect as to afford us much light in the present case.

In *Treadwell* v. *Salisbury Manuf. Co.* 7 Gray, 393, this court held that a manufacturing corporation could by vote of a majority of the stockholders sell out its whole property to another manufacturing corporation, and take its pay in the stock of that company. In that case it is said that while corporations *quasi* public may be restrained and directed in the management of their affairs, yet corporations established for trading and manufacturing purposes may wind up their affairs whenever they think proper to do so, and in the manner adopted in that case.

The legality of the transaction could not have depended upon the intention of the corporation to wind up its affairs immediately. If it had taken the stock in payment for goods, or for the sale of a building or land or water power which it did not want or desired to sell, while it still carried on its business, the act must have been equally legal. We have no occasion to say how it would have been if the stock had been purchased for permanent investment. If such a question should arise, it would require much consideration. A great part of the business of the community is done by means of corporate organizations. The State itself is a body corporate ; so are counties, towns, and lesser municipalities. Education is managed principally by corporations, not only in the form of school districts, but of colleges, academies, libraries, &c. Travel and transportation are on railroads managed by corporations. Banking, insurance, manufacturing, and trade are largely managed by like instrumentalities. It would be difficult for many of them to manage their business and collect their debts if they could not, at least temporarily, hold the stock of other corporations. Some of them, as savings banks, for example, are restrained by

statute. But corporations established for manufacturing and trade are under no statute restrictions which can apply to a case like the present. And if any of them were to make illegal investments in the stock of others, it would not follow that the stock would be a nullity in their hands. They might be subjected to a forfeiture of their charter, or stockholders might apply to the court to restrain them. Their contracts might to some extent be held void. But by holding certificates of the stock they could not exempt themselves from responsibility to innocent third persons, nor acquire rights which legal holders did not possess. Nor would the objection to the illegal traffic in stocks be a mere technical one that could be evaded by holding the stock in the name of an individual, as it would seem to be were we to adopt the plaintiff's view.

On consideration of the whole subject, we are of opinion that the Baldwin Company had a legal right to take this stock as it did for payment of a debt; and that it then became a co-stockholder in the defendant company with those who are summoned in, and could not transfer to the plaintiff, its president, he knowing all the facts, a right against the defendants which it did not itself possess. The plaintiff purchased the notes, subject to all the equities existing between the defendants and the Baldwin Company, and these rights were not affected by a transfer of the stock of the Baldwin Company a short time previous to the sale of the notes to the plaintiff.

The note dated June 12th 1854 and payable on demand was not purchased of the Baldwin Company, and the liability of the stockholders depends upon other considerations. By the Rev. Sts. *c.* 38, § 16, the stockholders are jointly and severally liable for the debts of the company till the capital stock shall be paid in and a certificate thereof made and recorded in the registry of deeds. Section 17 prescribes the form of the certificate and the time within which it shall be filed. Section 22 requires the corporation to give notice annually in some newspaper, published as therein prescribed, of the amount of assessments voted and paid in, and the amount of all their existing debts; and provides that if they fail to do this, the stockholders

shall be liable for all their debts then existing, or afterwards contracted before the notice is given.

The word " annually " is somewhat equivocal ; for it may relate to the calendar year, or the period of holding annual meetings, or the time when the capital stock is paid in, or the time when the certificate is filed in the registry of deeds. Some light is thrown upon the question by *St.* 1829, c. 53, § 7, which provided that the publication should be made annually after the filing of the certificate. It does not appear that any change was intended to be made in this provision by the revision of the statutes ; and we are of opinion that, by the most natural construction of the language of the Revised Statutes, the year commences at the time of filing the certificate. This note was given after the filing of the certificate, and within a year from that time publication was made. The stockholders are not therefore liable personally to pay this note.

*Judgment for the stockholders.*