Day, J.
There is no controversy but that the defendants, while • doing business under the name of the Citizens’ Bank of Steuben-ville, by their agents, received of the plaintiff the amount of money sued for, and promised to pay him the same, as stipulated in the instrument mentioned in the petition. These facts, as well as the averment in the petition that they refused, on demand, to pay the plaintiff such money due him, the defendants do not deny in their answers ; but they severally deny that they are jointly or individually indebted to the plaintiff therefor".
They claim that the transaction was wholly between the plaintiff and the Citizen’s Bank of Steubenville as an incorporated institution ; and that, therefore, they are not responsible therefor.
The question for our determination, then, is, whether, upon the showing in this record, the plaintiff was entitled to a judgment against any or all of the defendants in their individual capacity.
This involves the consideration of at least one, possibly two *552 questions; first, whether the Citizens’ Bank of Steubenville was a corporation with power to make the contract mentioned in the petition; and, if not, secondly, were the defendants individually liable to the plaintiff for the money in controversy.
It appears from the facts, as found by the court of common pleas, that the defendants, on the 20th day of October, 1851, signed a certificate, and took other necessary steps to associate ^themselves as a banking company, and to become incorporated by the name of “ The Citizens’ Bank of Steubenville,” under the act of March 21,1851, “to authorize free banking.” S. & C. Stat. 168.
On the 29th day of November following, they procured the certificate of the “ auditor, governor, and secretary of state,” and were then, as declared in the tenth section of the act, “ created a body politic and corporate.”
The Citizens’ Bank of Steubenville was then a corporation, by means of which the corporators might become authorized to “ engage in the business of banking, with all the rights, privileges, and powers conferred by and subject to the restrictions ” of the act under which the corporation was created.
The powers of the corporation are thus generally indicated in the first section of the act; and in the remaining portions thereof, such powers only are conferred as appertain to banking, and to enable the corporators to commence and carry on that business.
The “business of banking,” mentioned in the first section of the act, is more specifically defined in the tenth section, wherein the corporation is authorized “to loan money, buy, sell, and discount bills of exchange, notes, and all other written evidences of debt, except such as may be herein prohibited; to receive deposits, buy and sell gold and silver coin and bullion, collect and pay over money, and transact all other business properly appertaining to banking, subject to the provisions and restrictions of this act.”
It will be seen that in this section the power “ to receive deposits ” is connected with the 'items of “ other business properly appertaining to banking,” thereby showing that receiving deposits is, within the meaning of the act, banking business.
Moreover, the language of the first section is reported in this— that these banking privileges are conferred “ subject to the provisions and restrictions of this act.”
Among other restrictive provisions of the act, a very significant *553 one is expressed in the forty-fourth section, in terms too explicit to be misapprehended, viz:
*“No banking company shall commence the business of banking under this act until such company shall have deposited with the auditor the securities required by law, equal in amount to sixty per centum of the capital stock of such banking company.”
The deposit of the securities here mentioned, is, by this section, made a condition to be performed before the corporation had the right or power to engage in the “business of banking,” as authorized in the first and tenth sections of the act.
The securities referred to in this section are the stocks of the State of Ohio, or United States, required under the seventh section to be deposited with the auditor for the purpose of procuring and securing the circulating notes to be issued by the company. These notes could be procured of the auditor only; and not until after the stocks referred to were deposited with him; there was therefore no necessity for the prohibition in the forty-fourth section, further than to fix the amount required to be deposited, unless it applied to banking business other than the issue of circulating notes. That it does so apply, is evident from the language of the section; for the prohibition is as broad as the authority given under the act for doing a banking business.
This construction is strengthened by reference to a similar provision in the thirtieth section of the act of February 24,1845, “to incorporate the State Bank of Ohio, and other banking companies,” and which was in force when the act of 1851 was passed. It is provided in that section that each independent banking company, organized under that act, “shall, before it shall commence banking business, and before it shall be held to have acquired corporate powers, deposit with and transfer to the treasurer of state, certificates of the funded debt of this state, or of the United States, at least equal in amount to the amount of its capital stock at such time paid in.” S. &. C. 128.
The obvious intent of these sections is substantially the same thing. While in one case no corporate power was acquired, in the other its exercise was prohibited as to the business for which it was granted until the requisite stocks *were deposited. All that could be done by the company, under the act of 1851, before such deposit, was to organize, deposit stocks as required by the act, and *554 make needful preparations for the business contemplated by tbe law of its creation.
The construction we have given to section 44, is rendered more clear by section 41 of the same act. It is provided in that section, that “ whenever any such company, being desirous of relinquishing its banking business,” may redeem eighty-five per cent, of its circulating notes, fully secure the payment of the balance, on six months’ published notice may withdraw the stocks so deposited, “and thereupon all the corporate powers of such company, except such as shall bo necessary to close up its affairs, shall cease.”
The statutory provision for annihilating the-banking powers of the company, is the withdrawal of the stocks from the auditor. The act contemplates, that all such powers exist only while such stocks remain with the auditor.
Under the act of March 12,1845, “to prohibit unauthorized banking,” etc., corporations are prohibited from engaging in the business of banking, “without express authority of a law of this state.” S. & C. Stat. 152. From this statute, and the two acts to authorize banking, before referred to, it would seem to be the manifest purpose of the legislation of this state, on this subject, to confine all banking done by corporations to such banks as, under the guarded provisions of the statute, furnished the circulating medium of the state. To such banks, only, wore committed general banking powers. It is inconsistent with the legislative policy of this state, to suppose that it was intended, by the act of 1851, to confer corporate privileges upon associations for a brokerage business only. That business, except as authorized to be done by banks duly qualified as banks of issue, has been left to the enterprise of private persons, coupled with their full responsibilities.
It appears from the facts found by the court, that the company, under the name of the Citizens’ Bank of Steubenville, engaged in every species of banking, except the issue of notes *of circulation, without depositing stocks as required by law; and that, in the transaction of such business, the money of the plaintiff was received, and that the certificate of deposit shown in the record was given therefor.
All this business with the plaintiff, done in the name of the bank, the corporation was forbidden to transact, and therefore had no power to do, or to authorize its officers to do. Indeed, it had no power to carry on the business in which its officers were engaged, *555 or to engage in the business for which it was organized. It was a corporate body, it is true, but lifeless for all the purposes of its creation. It could be animated with banking powers only by complying with the requisition of section 44.
The contract with the plaintiff, then, as to the corporation, the defendants must concede, was void. Ang. & Ames on Corp., sec. 256.
A banking business was carried on in the corporate name by the defendants, and it is claimed that, since they had neither the right nor power so to do as a corporation, but possessed both as partners, the law will presume that they carried on the business in their lawful right, and will hold them.responsible as partners. On the other hand, it is claimed that the defendants were duly incorporated, and that, having acted in good faith in that capacity in their transactions with the plaintiff, they are shielded from private liability. And this brings us to the inquiry, whether the defendants, or any of them, are liable in their individual capacity.
It is not disputed but that the officers and agents of corporations are protected from private liability while acting within the scope of the corporate powers ; but how far such protection is extended when they transcend the corporate authority, is not clearly defined. That in such cases a personal liability exists, seems to be recognized, in many eases, in this and other states. Lawler v. Walker, 18 Ohio, 157; Kearnoy v. Buttles, 1 Ohio St. 362; Salem Bank v. Gloucester Bank, 17 Mass. 29; Lawler v. Burt, 7 Ohio St. 353 ; Fry v. Noble, 7 Cush. 188; Hood v. The New York and New Haven R. R. Co., 22 Conn. 502.
*It is well settled that they, who occasion injury to others by the fraudulent use of corporate powers, are personally liable in damages therefor. Bartholomew v. Bentley, 15 Ohio, 659; Bartholomew v. Bentley, 1 Ohio St. 37 ; Vose v. Grant, 15 Mass. 519; Trowbridge v. Scudder, 11 Cush. 83.
It was hold, in the case of Fry v. Noble (7 Cush. 188), that the stockholders in a defectively organized corporation, and which had transacted business under such organization, do not thereby become partners in such business, for the reason that innocent parties might thereby become involved in liabilities to which they never gave their assent, or which were not embraced in their stock subscriptions. But it was held in that case, that an agent acting in the name of such unorganized corporation, would be personally *556 liable upon a “familial1 principle of law, that a person who acts as agent without authority, or without a principal, is himself regarded as a principal, and has all the rights, and is subject to all the liabilities, of a principal.”
It is clear, that the persons who carried on banking business in the name of the Citizens’ Bank of Steubenville, had no authority from the corporation of that name for so doing. So far were they from having such authority, that some of my brethren hold that, in legal effect, there was no corporation for doing a banking business in existence, in this case. If so, the persons who carried on such business as agents, without a principal, did so for themselves, and are personally responsible. Story on Agency, sec. 280; 2 Kent’s Com. *630, sec. 41; Ang. & Ames on Corp., sec. 303.
While it is true that the defendants acted in good faith, as the record shows, and, doubtless believed themselves to be protected from private liability under corporate privileges, it is equally clear, that the plaintiff had no information as to whether they were doing business as a corporation, or as private bankers. He seems to have trusted them in the latter capacity. At all events, he did not know that they had failed to comply with the requisitions of the statute, and that, therefore, the certificate he received for his money, was, to say the least of doubtful availability against the corporation.
By reason of the mistake or negligence of the defendants *in not depositing stocks with the auditor, the receiving the deposit of the plaintiff by them as a corporate bank, was forbidden by law; and whether the law would afford any remedy in favor of the plaintiff against the corporation, upon a contract, express or implied, made on its part in violation of law, may well be doubted, both upon principle and authority. As the corporation was prohibited from receiving the deposit, there is the same reason for holding the implied as well as the express promise, void. Clearly the plaintiff would have no remedy against the corporation, unless he could bring to his aid the doctrine of estoppel, where the transaction is forbidden, as may be done where it is merely unauthorized. Although the court do not deem it necessary to decide this point, the following authorities tend to show that the plaintiff is remediless against the corporation : Ang. & Ames on Corporations, secs. 256, 265, and note 7; 22 Conn. 502; 8 Gill & Johns. 248; 8 Barb. 233; 36 Barb. 210 ; 22 N. Y. 258; 3 Comst. 19.
*557 Whether the plaintiff could avail himself of the aid of the doctrine of estoppel against the corporation or not, the defendants are not -in a position to insist on his right in that respect, to exculpate themselves from any liability against them, arising out of a want of remedy by the plaintiff against the company.
The plaintiff has elected not to experiment upon a doubtful right against the company, but has resorted to those whom he trusted, and who received his money. They admit that they received his money, and that it remains unpaid. Upon the just principles of the common law applicable to individuals, they are personally liable to pay it, unless they are excused or protected by the intervention of some recognized rule of law. They interpose the privilege corporators enjoy, shielding them from private responsibility for debts incurred in their corporate capacity. But the record discloses that the defendants not only lacked the power, but were positively forbidden to receive the money of the plaintiff, in the corporate capacity claimed by them. To suffer this to be available to the defendants, would render that legal which is prohibited by law—it would annul the statute; nay, it would be giving *to corporators, who carry on business without authority and in violation of law, rights equal with those who are careful to observe its wholesome provisions. The well established principles of legal justice must be “ reconstructed,” before they will suffer such a defense to avail against the payment of a just debt.
A plain distinction exists between acts simply without authority, and those which are forbidden by law; the former may be without right; the latter can be done not only without right, but only in the commission of a positive wrong. This case belongs to the latter class. Nor was this a single instance. The record shows that the entire business, carried on in the corporate name, was done in violation of law. It is not, therefore, necessary for us to determine in this case whether those acting for a corporation, duly organized and authorized to do business, are personally liable for every obligation incurred in violation of its charter, or of the law of the state; much less is it necessary to consider whether they are so liable when they simply transcend the corporate authority.
Without undertaking to determine how far the principle may be extended, it is decisive of this case to hold as we do, that where the entire business, carried on by persons in the name of a corporation, is such as the corporation is prohibited by law from doing, they *558 can not interpose the corporate privileges between them and the liabilities which the law imposes upon individuals in the transaction of similar business without the use of the corporate Dame.
It by no means follows that.all the subscribers to the stock of the corporation are personally responsible for the debts contracted in the transaction of such business; for that is not the legal import of the-subscription contract, and the business may be thus carried on without the knowledge or participation of all the stockholders. The law would imply that they alone assumed the liabilities of such business who engaged in it, or who authorized or sanctioned it.
Applying this principle to the facts as disclosed by the record in this case, it can not be doubted but that the business, carried on in the name of the corporation by some of *the defendants, was fully understood, authorized, and sanctioned by all.
The transaction with the plaintiff was but a part of an entire business, and must, therefore, have been as fully authorized as any business done in the name of the bank. It was carried on through a series of years; and during its progress the stockholders elected directors to carry on this very business, as it must be presumed, since it was the only business it did, or attempted to do.
It follows that the judgment of the court of common pleas must be reversed. But, as it is insisted by counsel for the defendants that there are facts rendered material to some of the defendants under the conclusion to which we have, come, not shown by the record; and as it is left doubtful by the record whether some of the defendants were members of the association when the indebtedness to the plaintiff was incui’red; and as it is desired to bring in the representatives of deceased parties and make them parties to the record; on motion of the defendants, the cause is remanded to the court of common pleas for further proceedings, trial, and judgment.
Scott,C. J., and White, Welch, andBmtiKERHOEE, JJ., concurred.