Okey, J.,
dissenting. In Massachusetts, “ it is the estabtablished law that the holder of a negotiable note may bring suit upon it, whether in law or in fact he be orbe not the real owner of it.” National Bank v. Porter, 125 Mass. 333, 339. In Minnesota, the suit must be brought by the real party in interest. There are exceptions to the rule, but a case like this would not be within them. Farmers’ and M. Bank v. Baldwin, 23 Minn. 198; First National Bank v. Pierson (Minn.), 16 Albany L. Jour. 319; s. c., Thompson’s Nat. Bank Cas. 637. This difference in the practice in those states was supposed, as will be seen in the eases cited, to be a sufficient explanation of a difference in holding upon the question whether a national bank *340 purchasing a promissory note may maintain an action thereon, assuming the purchase to be one which it was not authorized by law to make. The statute of this state is like that of Minnesota. It is a sufficient defense in Ohio that the plaintiff is not the real party in interest. The answer in this case embraces that defense, and therefore it was error to sustain a demurrer to it.
But I do not place this dissent alone or principally upon such narrow ground. It appears from the answer that the contract between the insurance companies was entered into, not merely without authority of law, but in direct violation of statutes prohibiting it. The Home Company undertook to transfer all its property and business to the Central Company by a single and entire contract. The contract embraced real estate. The statute specifies the circumstances under, and purposes for which, such corporations may hold real estate, and it appears from the answer that the real estate attempted to be purchased was not within that provision. The same statute provides that “ it shall not be lawful for any company to purchase, hold, or convey real estate in any other ease or for any other purpose.” 69 Ohio L. 153, § 12.
In a larger sense, however, the statutes prohibited the contract. They provide that such company may “ make insurance on the lives of individuals,” show what business may be done in connection therewith, how policy holders shall be secured, how the funds of the company shall be invested, how the company may reinsure, and how it may be wound up. The whole act negatives the claim that the self-destruction attempted in this case was authorized. Indeed, the opinion has not been expressed by any member of this court that the contract was lawful, in the sense that either company could have enforced its execution as against the other. At the same time, it is asserted, in the opinion of the majority, that it does not appear that the contract has been rescinded. That, however, is not material, for it does not appear that the contract has been executed. There can be no presumption that an illegal contract has been per *341 formed. If the company wished to rely upon the fact that the contract had been executed, a reply instead of a demurrer to the answer would have been proper.
There is a well-known distinction between a mere abuse of the power delegated to directors and the absence of power in the corporation itself. The directors of a corporation may be authorized to receive the indorsement of a promissory note in a particular way, or on a particular consideration, and this authority may be abused. Or a corporation, authorized to receive the indorsement of a promissory note, may enter into a single and entire agreement, expressly prohibited by its charter, by which agreement a promissory note, among other things, is received. The distinction between these eases is important, but it is disregarded in the decision of this case. According to many authorities, the corporation receiving the note, in the instance first mentioned, may recover upon it. But I humbly submit that no case other than this can be found, in England or America, where a recovery has been permitted in the latter case. The title acquired by such an agreement is no better than if the company had been, in terms, prohibited from receiving the note. The transfer was “ void for all purposes and as against all persons.”
The principles I have stated are so distinctly asserted and ably vindicated in Straus v. Eagle Ins. Co., 5 Ohio St. 59, that the citation of other authorities seems almost a work of supererogation. As being in entire harmony with that decision, I will refer, however, to the following cases, most of which have been decided since it was announced : Farmers’ and M. Bank v. Baldwin, supra; First National Bank v. Pierson, supra; Smith v. St. Louis M. L. Ins. Co., 2 Tenn. Ch. 742; Hood v. N. Y. & N. H. R. Co., 22 Conn. 502; Hays v. Ottawa, etc., R. Co., 61 Ill. 422; Madison Plank R. Co. v. Watertown Plank Road Co., 7 Wis. 59; Board, etc. v. Lafayette, etc., R. Co., 50 Ind. 85 ; Pearce v. Madison, etc., R. Co., 21 How. 442; E. A. Railways v. E. C. Railway, 73 Eng. Com. L. 775; Toomey v. L. B. &. S. C. Railway, 91 Eng. Com. L. 146; Ashbury Railway, etc. v. *342 Riche, L. R., 7 Eng. & Ir. Appeal, 653. And see Richardson v. Sibley, 11 Allen, 72; Widoe v. Webb, 20 Ohio St. 431.
There is a remark of the judge delivering the opinion in White's Bank v. Ins. Co., 12 Ohio St. 601, 610, wholly unnecessary to the decision of that case, which is claimed to qualify something said by Ranney, J., in Straus v. Ins. Co.. Precisely what the supposed qualification is, or why it was suggested, is not very apparent. But I am satisfied that Straus v. Ins. Co., being founded on correct principles, will withstand all the assaults made upon it.
The rule that the charter of a corporation must be strictly construed, has been enforced in this state for many years. The statute now provides that “ corporations may be formed . . . for any purpose for which individuals may lawfully associate themselves, except for dealing in real estate, or carrying on professional business ” (Rev. Stats., § 3235), or banking (Const., art. 13, § 7). It is probable that the number of corporations organized in any year hereafter will greatly exceed that of any preceding year. In my opinion this is not a time when we should relax the strict rule upon this subject, which has operated so well in this state in the past. As this decision is in direct conflict with that rule, I dissent from it.
This case was considered in connection with others involving supposed rights under the same or a similar contract. Without entering a formal dissent in any of them, this dissent applies to every case where the same infirmity was set up and the judgment or modification is in favor of the company. In some of them additional reasons for the view I have taken will be found to exist.